**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ADRIANA VILLASANA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. SA-13-CV-278-XR |
| CITY OF SAN ANTONIO, ROBERT | § | |
| MCDANIEL, CHRISTINA GONZALES, | § | |
| and J. PURDUE, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Defendant Robert McDaniel's, Defendant Cristina Gonzales's, and Defendant J. Perdue's (collectively, the "Officers'") motion for summary judgment (docket no. 26).[1]  For the following reasons, the Court GRANTS IN PART AND DENIES IN PART the Officers' motion.  The Court also considered Defendant City of San Antonio's (the "City's") motion for summary judgment (docket no. 27).  For the following reasons, the Court GRANTS the City's motion.

**I. Background**

**A. Factual Background[2]**

Plaintiff Adriana Villasana's claims arise out of the alleged use of excessive force by officers of San Antonio Police Department.  At around 10:00 p.m. on the night of March 20,

---

[1] Officer Gonzales states that she was incorrectly named as Christina Gonzales in Plaintiff's amended complaint. Sgt. Perdue states that he was incorrectly named as J. Purdue in Plaintiff's amended complaint.

[2] The facts are drawn from the summary judgment record, which includes, among other things, excerpts from Plaintiff's deposition transcript, affidavits from Officers McDaniel and Gonzales, and police incident reports.  The Court does not consider as evidence allegations from Plaintiff's amended complaint. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.").

2011, Plaintiff and some friends met at a bar in downtown San Antonio. Pl.'s Dep. 38:8–22.[3] Plaintiff had a shot of liquor and one beer. *Id.* 39:2–14.  After about an hour and a half at the downtown bar, Plaintiff and her friends moved to a bar just north of downtown, at the intersection of Evergreen and Main Street. *Id.* 39:15–40:16.  Plaintiff had three beers at the second bar. *Id.* 40:17–24.  Around 1:00 a.m. in the early morning of March 21, 2011, Plaintiff and two of her friends left the second bar for a café across the street. *Id.* 41:10–15.  Plaintiff had a soft drink. *Id.* 41:16–18.

While at the café, an altercation developed between two of Plaintiff's acquaintances, David Rodriguez and John Anthony Ochoa. McDaniel Aff. at 1–2, Docket No. 26, Ex. C.  The San Antonio police were called to the scene. *Id.* at 1.  Officer McDaniel, Officer Gonzales, and Sgt. Perdue were among the dispatched officers. McDaniel Aff. at 1–2; Gonzales Aff. at 1, Docket No. 26, Ex. D.

The officers arrived to a chaotic scene. Pl.'s Dep. 139:20–22.  When the officers arrived, the bars and café were emptying. *Id.* 139: 8–19.  Despite this chaos, the officers were able to subdue the belligerents. McDaniel Aff. at 2.

At this point, the parties' accounts of events diverge.  Plaintiff asserts that one of the belligerents, Mr. Rodriguez, was placed in Officer McDaniel's patrol car. *Id.* 140:16–17.  Plaintiff approached the vehicle, and Officer McDaniel told her to "step aside" from the vehicle and "have a seat." Pl.'s Dep. 66:2–4; 140: 14–19.  Plaintiff asserts that she complied with the order by squatting. *Id.* 66: 4–7.  While squatted, Plaintiff overheard Officer McDaniel make an offensive remark about two men allegedly fighting nearby.  According to Plaintiff, Officer McDaniel told a nearby officer to "look at those fags." *Id.* 66: 8–13; 140:8–25.  Plaintiff,

---

[3] Excerpts from Plaintiff's deposition transcript are found as Exhibit B to the Officers' motion for summary judgment and as Exhibit 1 to Plaintiff's response thereto. Docket Nos. 26 & 29.

allegedly offended by this comment and the officers' failure to respond to the second fight, stood up. *Id*. 66:8–67:12. Plaintiff asked Officer McDaniel why he and the other officers were not responding to the second fight. *Id*. Plaintiff then took a step toward Officer McDaniel. *Id*. 13–15. Officer McDaniel then told Plaintiff to step back. *Id*. 67: 15–18. Plaintiff, unsure if Officer McDaniel was addressing her, disregarded Officer McDaniel's request. *Id*. Officer McDaniel then rushed toward Plaintiff and slammed her against his patrol car. *Id*. 67:19–25; 147: 13–18. While Plaintiff was against the patrol car, Officer McDaniel worked his hand down to Plaintiff's left wrist and pulled it back with such force that the bone in Plaintiff's upper arm broke. *Id*. 70:12–17; 140:1–3. Plaintiff's arm went limp and she started crying. *Id*. 18–22.

Plaintiff's summary judgment evidence is silent as to what happened immediately next. At some point later that night, Plaintiff was transported to a local hospital. *Id*. 101:17–25. Plaintiff's attending physician told her that her humerus was broken. *Id*. 102:12–15. Plaintiff was then taken to a second hospital. *Id*. 102:1–5. While at the second hospital, an X-ray was taken, which revealed that Plaintiff's humerus was separated 2-1/2 inches by a fracture. *Id*. 103:3–7. Plaintiff then underwent a 6-1/2 hour surgery to reset the bone. *Id*. 103:16–22. In April 2011, Plaintiff returned for a follow-up visit and began physical therapy. *Id*. 104:14–25.

The Officers' version of events from the night of March 20–21, 2011 tells a much different story. The Officers report that in the early morning of March 21, they arrived on the scene and subdued the belligerents, Mr. Rodriguez and Mr. Ochoa. McDaniel Aff. at 2; Gonzales Aff. at 2. Officer McDaniel then began handcuffing Mr. Rodriguez. McDaniel Aff. at 2. While Officer McDaniel was handcuffing Mr. Rodriguez, Plaintiff tried to step between Officer McDaniel and Mr. Rodriguez. *Id*.; McDaniel Incident Report at 7. Officer McDaniel warned

3

Plaintiff not to interfere, and Plaintiff initially complied. McDaniel Aff. at 2; McDaniel Incident Report at 7. Officer McDaniel finished handcuffing Mr. Rodriguez, placed Mr. Rodriguez in the back of his patrol car, and then sat in the front of his patrol car and began arrestee processing. *Id.*

At this point, two sergeants arrived on the scene, Sgt. Perdue and Sgt. Kevin Luzius.[4] Perdue Incident Report at 3, Docket No. 26, Ex. A; Luzius Incident Report at 3, Docket No. 26, Ex. A. Sgts. Perdue and Luzius observed a fight break out across the street from where they stood. Perdue Incident Report at 3; Luzius Incident Report at 3. They moved to respond; however, before going over to break up the fight, Sgt. Luzius saw Plaintiff yelling and cursing at Officer McDaniel's patrol car. Perdue Incident Report at 3; Luzius Incident Report at 3. Sgt. Luzius observed Plaintiff approaching the vehicle. *Id.* He saw Officer McDaniel within, unaware that Plaintiff was approaching. *Id.* Sgt. Luzius then warned Plaintiff to get back. *Id.* Plaintiff, however, continued to approach the vehicle, yelling slurred profanities. *Id.* Sgt. Luzius then observed Mr. Rodriguez become enraged within the car and begin to hit his head against the car door and window. *Id.* He also saw that Plaintiff's eyes were bloodshot, and he smelled the odor of alcohol on her breath. *Id.*

Plaintiff was close enough to open the vehicle door. *Id.* Sgt. Luzius stepped forward, told Plaintiff that she was under arrest, and attempted to place handcuffs on her. *Id.*; Perdue Incident Report at 3; McDaniel Aff. at 2. Plaintiff then pulled away, but Sgt. Luzius pulled Plaintiff's hands back behind her. Luzius Incident Report at 3. Plaintiff pulled away again. *Id.* During this struggle, Plaintiff and Sgt. Luzius moved from the back right to the front of Officer McDaniel's patrol car. McDaniel Aff. at 2. When Plaintiff and Sgt. Luzius had reached the front of the car, Officer McDaniel saw the struggle and exited his vehicle. *Id.*; McDaniel Incident Report at 7;

---

[4] Sgt. Luzius is not a defendant in this case.

Luzius Incident Report at 3; Perdue Incident Report at 3.  Officer McDaniel moved around to the front of his car, and grabbed Plaintiff's right wrist. McDaniel Aff. at 2; McDaniel Incident Report at 7.  Plaintiff then pulled to her left, and Officer McDaniel fell to his right. *Id.*; McDaniel Incident Report at 7; Luzius Incident Report at 3.

What transpired in the next split second is somewhat unclear.  Officer McDaniel states that he let go of Plaintiff's wrist. McDaniel Aff. at 2.  He saw Sgt. Perdue come towards Plaintiff. *Id.*  He then heard a pop. *Id.* at 3.[5]  Regarding this split second, Sgt. Luzius states that he reached out to break Officer McDaniel's fall. Luzius Incident Report at 3.  Plaintiff then started falling the other way. *Id.*  Sgt. Perdue came in and grabbed Plaintiff's left arm as she was falling. *Id.*  Plaintiff's arm bent up behind her back and broke. *Id.*  Finally, Sgt. Perdue states that as he moved in to help Officers McDaniel and Sgt. Luzius, he saw Officer McDaniel lose his footing and fall to the ground. Perdue Incident Report at 3.  Sgt. Perdue then grabbed Plaintiff's left forearm and began to push her back to the car. *Id.*  At this point, Plaintiff began to fall to the ground, and, as Sgt. Perdue held Plaintiff's forearm, he felt her arm pop. *Id.*

After Plaintiff's arm broke, Sgt. Luzius cuffed Plaintiff's left wrist and placed her on the ground. *Id*. Sgts. Luzius and Perdue state that Plaintiff seemed to register no pain. *Id.*; Luzius Incident Report at 3.  After the incident, EMS arrived and transported Plaintiff to a nearby hospital. Luzius Incident Report at 3.

Finally, Officer Gonzales states that she was not part of the scuffle with Plaintiff. Gonzales Aff. at 2.  Once she saw her fellow officers moving to intervene to prevent Plaintiff

---

[5] In his affidavit, Officer McDaniel states that he could not actually see whether Sgts. Perdue and Luzius were trying to handcuff Plaintiff, though he believed they were. McDaniel Aff. at 2–3.  In his incident report, however, Officer McDaniel states that Sgt. Perdue approached, grabbed Plaintiff's right [*sic*] wrist, and pulled her arm behind her. McDaniel Incident Report at 7.  Officer McDaniel states in his affidavit: "To be clear, I was not in physical contact with Ms. Villasana when her arm was broken.  Nor did I at any time that night push Ms. Villasana's arm up behind her back as she has stated." McDaniel Aff. at 3.

from entering Officer McDaniel's patrol car, she turned her attention to the arrested person in her custody. *Id.*

## B. Procedural Background

On March 21, 2013, Plaintiff filed her lawsuit in the 285th Judicial District Court of Bexar County, Texas. Docket No. 1-1.  The City removed the action to this Court.  On April 26, 2013, Plaintiff amended her complaint. Docket Nos. 1 & 6.  Plaintiff's amended complaint asserts a cause of action against Officer McDaniel, Sgt. Perdue, and the City for the excessive use of force.  Plaintiff further asserts that Officer Gonzales is liable for her inaction as a bystander.  Additionally,  Plaintiff asserts that the City is liable for the negligent training and supervision of the Officers.  Finally, Plaintiff asserts state-law claims against Officer McDaniel and Sgt. Perdue for assault and against Officer McDaniel and the City for malicious prosecution.

The Officers moved for summary judgment on December 6, 2013. Docket No. 26. Officer McDaniel and Sgt. Perdue assert that they did not use an unreasonable amount of force when arresting Plaintiff.  Further, they assert that they are entitled to qualified immunity.  Officer Gonzales states that even if Officer McDaniel and Sgt. Perdue used excessive force, she was neither aware of, nor had an opportunity to take reasonable measures to prevent the use of excessive force.  Finally, Officer McDaniel and Sgt. Perdue assert that they acted within the scope of their employment, and consequently, they are shielded from Plaintiff's state-law tort claims.

On December 6, 2013, the City also moved for summary judgment. Docket No. 27.  The City asserts that if the Officers used excessive force and violated Plaintiff's constitutional rights, the City was not the moving force behind the violation and, therefore, is not liable.  Further, the

City argues that it is not liable for negligent training and supervision since it has a robust training and supervision regime.  Finally, the City notes that it has sovereign immunity from Plaintiff's state-law claims.

Plaintiff responded to Defendants' motions for summary judgment. Docket Nos. 29 & 30.[6]  Defendants, thereafter, replied. Docket Nos. 31 & 32.

## II. Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

---

[6] Plaintiff's responses states that she is not pursuing claims based on Defendants' alleged violations of her Fifth and Fourteenth Amendment rights. Docket No. 29 at 4; Docket No. 30 at 4.  Accordingly, the Court will not analyze Plaintiff's claims as asserting violations of rights guaranteed by the Fifth and Fourteenth Amendments.

## III. Discussion

### A. Excessive Force Claim

Plaintiff sues Sgt. Perdue, Officer McDaniel, and the City for the use of excessive force under 42 U.S.C. § 1983.  Section 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  One such right secured by the Constitution is the "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *see* U.S. CONST. amend. IV.

### 1. Excessive Force Claim against Sgt. Perdue and Officer McDaniel

Sgt. Perdue and Officer McDaniel have raised the defense of qualified immunity to Plaintiff's excessive use of force claim.  "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  Once qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment. *Id.*  Claims of qualified immunity require a two-step analysis.  The Court decides "(1) whether facts alleged or shown by [a] plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), overruled in part by *Pearson v.*

8

*Callahan*, 555 U.S. 223 (2009)).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

It is clearly established that the Fourth Amendment confers a right "to be free from excessive force during a seizure." *Poole*, 691 F.3d at 627.  The Supreme Court has explained:

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted); *Poole*, 691 F.3d at 627; *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (noting the factors as the "*Graham* factors").  "Excessive force claims are thus necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Poole*, 691 F.3d at 627.  "To make out a Fourth Amendment violation, let alone one that violates clearly established law, 'the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (citing *Graham*, 490 U.S. at 397).  The court must evaluate the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

To overcome Sgt. Perdue's and Officer McDaniel's claim of qualified immunity on her excessive force claim, Plaintiff must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly

unreasonable." *Poole*, 691 F.3d at 628.  The inquiries into whether the use of force was excessive and whether the excessiveness was clearly unreasonable are often intertwined. *Id.*  In evaluating whether the use of force was clearly excessive and clearly unreasonable, the Court evaluates each officer's actions separately, to the extent possible. *Id.*  On a defendant's motion for summary judgment, the Court must also view the evidence in the light most favorable to the plaintiff. *Id.* at 629.  "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### a. Officer Perdue

Plaintiff's version of the facts differs markedly from the Officers'.  Regarding the events that transpired on the night of March 20–21, 2011, the record contains only the deposition testimony of Plaintiff, the affidavits of Officer McDaniel and Officer Gonzales, and the police incident reports submitted by the responding officers.  The record contains neither video evidence nor testimony of third-party witnesses.  Accordingly, the Court finds that Plaintiff's version of the facts is not blatantly contradicted by the record. *See Scott*, 550 U.S. at 380–81 (instructing courts not to consider a version of the facts blatantly contradicted by the record, including video evidence in the record).  Thus, the Court will adopt Plaintiff's version of the facts in ruling on the motions for summary judgment.

Under Plaintiff's version of the facts, Officer McDaniel grabbed Plaintiff, slammed her onto his patrol car, moved his hand towards her wrist, and yanked her wrist up with such force that Plaintiff's arm broke.  Plaintiff asserts that only Officer McDaniel took ahold of her and applied excessive force. Pl.'s Dep. 70:23–71:25.  Thus, under Plaintiff's version of events, Sgt.

Perdue did not apply any force to her, let alone excessive force.  Accordingly, the Court grants Officer Perdue's motion for summary judgment.

### b. Officer McDaniel

To overcome Officer McDaniel's claim of qualified immunity, Plaintiff must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole*, 691 F.3d at 628.  Plaintiff undisputedly suffered an injury; therefore, the relevant inquiries are whether the injury resulted from the use of force that was clearly excessive and whether the excessiveness was clearly unreasonable.  These inquiries are intertwined. *Id.*

Relevant to the inquiries are the *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.  Here, under Plaintiff's version of events, the three *Graham* factors suggest genuine issues of fact exist regarding whether the force Officer McDaniel used was clearly excessive and clearly unreasonable.

The first *Graham* factor suggests a low threshold for excessive force.  Under Plaintiff's version of events, it is unclear whether she had committed any crime when Officer McDaniel took ahold of her.  Plaintiff alleges that Officer McDaniel told her to sit and that she complied with his order.  However, soon after, she stood up, remarked to Officer McDaniel that he should stop a nearby fight, and took a step towards Officer McDaniel.  Officer McDaniel then arrested Plaintiff, allegedly using excessive force.

The police reports from March 21, 2011 show that Plaintiff was arrested for interference with the duties of a public servant, resisting arrest, and public intoxication.[7] McDaniel Incident Report at 5.  Under Plaintiff's version of events, Plaintiff may have been interfering with the duties of a public servant.  A person commits the offence of interfering with the duties of a public servant, "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the officer is performing a duty or exercising authority imposed or granted by law." TEX. PEN. CODE § 38.15(a)(1).  Arguably, Plaintiff impeded Officer McDaniel's ability to respond to and control events on the scene; however, under Plaintiff's version of events, Officer McDaniel was simply viewing the scene and making crude remarks about the participants of an alleged fight.  Moreover, Texas law explicitly recognizes a defense to interfering with the duties of a public servant if "the interruption, disruption, impediment, or interference allegedly consisted of speech only." TEX. PEN. CODE § 38.15(d).  Since it is disputed whether Plaintiff interfered with Officer McDaniel's legally authorized duties, a genuine fact issue exists as to whether the crime of interfering with the duties of a public servant was at issue at the time Officer McDaniel allegedly began arresting Plaintiff. *See Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (finding that despite an individual's disruptive conduct to prevent a search of her home, the individual had not interfered with the duties of a police officer because the officer was not legally-authorized to search the individual's home).

Plaintiff was also arrested for public intoxication.  A person commits the offense of public intoxication if the person "appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PEN. CODE § 49.02(a).  Here, Plaintiff admittedly had five alcoholic drinks over a period of around four hours.  Thus, Plaintiff's

---

[7] Plaintiff alleges that she was charged with and acquitted of interference with the duties of a public servant and resisting arrest. *See* Am. Compl. ¶ 24.  She further alleges that she was not charged with public intoxication. *Id.*

evidence shows that Plaintiff may have been intoxicated. *See Id.* § 49.01(2) ("'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . .; or (B) having an alcohol concentration of 0.08 or more."). However, even if Plaintiff were intoxicated, under her version of the facts, she may not have been posing a danger to herself or others. In Texas, physical manifestations of alcoholic consumption alone are insufficient to constitute public intoxication. *Patterson v. State*, 01-11-00054-CR, 2012 WL 682262, at *4 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, no pet.) (mem. op.). Instead, a person must place himself or another in potential danger. *Id.* (citing *Dickey v. State,* 552 S.W.2d 467, 468 (Tex. Crim. App. 1977)). The standard of potential danger is easily met. *See e.g., id.* (finding an intoxicated person posed a potential danger where he was intoxicated in a parking lot, located off of a busy street); *Garcia v. State,* No. 14–09–00662–CR, 2010 WL 1223139, at *2 (Tex. App.—Houston [14th Dist.] March 30, 2010, no pet.) (mem. op.) ("Appellant exposed himself to potential danger by attempting to walk in a parking lot of a public place while in a state of intoxication"). *Simpson v. State,* 886 S.W.2d 449, 455 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (concluding that it was reasonable to assume moving vehicles posed a danger to an intoxicated person in the street); *White v. State,* 714 S.W.2d 78, 79 (Tex. App.—San Antonio 1986, no pet.) (holding that an intoxicated person posed a potential danger by being in a parking lot "where it is reasonable to assume that cars would travel in and out"). Nevertheless, Plaintiff's version of events raises a fact issue as to whether Plaintiff was intoxicated at the time of arrest and whether she posed a danger to herself or others since she was sitting and then standing by a curb.

Moreover, even if the crime of public intoxication is at issue, the crime is only a Class C misdemeanor. TEX. PEN. CODE § 49.02(c).  This crime is more akin to a minor traffic violation than burglary or armed robbery since a suspect is less likely to be armed; accordingly, the threshold for excessive force is lower. *See Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (rejecting police officer's claim for qualified immunity where officers allegedly roughly extracted an individual from her car after stopping the individual for a minor traffic violation); *Levins v. Smith*, 285 F. App'x 197, 198 (5th Cir. 2008) ("[W]e cannot say that the use of pepper spray, tackling and choking, twisting an arm until it fractures, and striking someone in the head with a flashlight are objectively reasonable uses of force where a motorist merely exits his automobile at the commencement of a traffic stop."); *Deshotels v. Marshall*, 454 F. App'x 262, 267 (5th Cir. 2011) (finding police officers had qualified immunity where the officers used a Taser on a burglary suspect and the officers had not confirmed that the suspect was unarmed; noting that a burglary is "normally and reasonably expected to involve a weapon"); *Kellough v. Bertrand*, 22 F. Supp. 2d 602, 608 (S.D. Tex. 1998) (finding police officers had qualified immunity where they mistook an innocent man for an armed robber and knocked the innocent man to the ground when arresting him).

Finally, under Plaintiff's version of events, she was not resisting arrest.[8]  Instead, she was the victim of excessive police force.  Thus, there is a genuine factual dispute over whether the crime of resisting arrest is at issue. *See e.g., Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) *cert. denied,* 134 S. Ct. 162, 187 L. Ed. 2d 40 (2013) (on summary judgment review, accepting the plaintiff's account that he was not actively resisting arrest, and upholding the

---

[8] A person commits the offense of resisting arrest, "if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest . . . of the actor or another by using force against the peace officer or another." TEX. PEN. CODE § 38.03(a).

14

denial of the defendant police officers' motion for summary judgment based on qualified immunity).

Next, under Plaintiff's version of the facts, *Graham* factor two weighs in favor of finding the force used on Plaintiff was excessive and unreasonable. Under *Graham* factor two, a court considers whether the suspect poses an immediate threat to the safety of the officers or others. Here, Plaintiff asserts that she stood by a curb away from Officer McDaniel. She allegedly took offense to a derogatory comment made by Officer McDaniel and his unwillingness to stop a fight occurring in the vicinity. She took a step toward Officer McDaniel. Neither Plaintiff nor the Officers explain exactly how far away Plaintiff was from the officers on the scene. Neither Plaintiff nor the Officers allege that Plaintiff carried a weapon or was physically imposing. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the summary judgment evidence reasonably establishes a fact issue that Plaintiff did not present a threat to the officers or others.

Likewise, *Graham* factor three weighs in favor of finding the force used on Plaintiff was excessive and unreasonable. *Graham* factor three requires a court to consider whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Here, accepting Plaintiff's version of the facts, she did not resist arrest or flee.

Plaintiff's version of events questions whether any crime was at issue, whether Plaintiff posed a threat to the officers, and whether Plaintiff resisted arrest. Her version of the facts also asserts that Officer McDaniel grabbed her wrist and yanked upward with such force that he broke her arm.[9] At the time of the incident, Plaintiff had a clearly established right to be free

---

[9] Officer McDaniel argues that Plaintiff admits that he did not intend to break Plaintiff's arm. Docket No. 26 at 14. Officer McDaniel's argument mischaracterizes Plaintiff's deposition testimony. *See* Pl.'s Dep. 147:4–148:4. Moreover, the concern is over whether Officer McDaniel intentionally applied force, not over whether he intended

from excessive force. *See Deville*, 567 F.3d at 169.  It was also clearly established that the amount of force that an officer could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Id.*  Here, under Plaintiff's version of the facts, none of the *Graham* factors justified the level of force employed. *See Newman*, 703 F.3d at 764 (finding that the police use of a Taser and nightstick on a passenger of a vehicle stopped for a traffic violation was objectively unreasonable where none of the *Graham* factors justified the force used).  "[A] reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances." *Id.*; *see Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (denying police officer qualified immunity where the accepted facts showed that the officer slammed a suspect's face onto a vehicle while she was restrained and subdued).  Accordingly, Officer McDaniel's motion for summary judgment based on qualified immunity is denied.  A fact issue exists as to whether Officer McDaniel applied force to Plaintiff's arm as Plaintiff alleges or Sgt. Perdue applied force to Plaintiff's arm as Officer McDaniel argues.  In addition, a fact issue exists as to whether Plaintiff was passively sitting or standing by the curb or approaching the patrol vehicle, yelling obscenities and threating to open the patrol car door to assist her acquaintance.

### 2. The City

Plaintiff alleges that the City is liable for Sgt. Perdue's and Office McDaniel's alleged use of excessive force.  "It is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)).  Instead, to establish municipal

---

to break Plaintiff's arm. *See Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (stating that a successful Fourth Amendment claim establishes "a governmental termination of freedom *through means intentionally applied*.") (emphasis in the original); *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013).

liability, a plaintiff must show that: (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Id.*; *Deville*, 567 F.3d at 170 (5th Cir. 2009). Official policy can arise in various forms. *Peterson*, 588 F.3d at 847. It usually exists in the form of a written policy. *Id.* However, a plaintiff can also prove the existence of a municipal custom by pointing to a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Deville*, 567 F.3d at 170 (citing *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

The Supreme Court has held that a municipality can be liable under § 1983 for failing to train its employees. *City of Canton v. Harris,* 489 U.S. 378, 378 (1989). However, the "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. The Court further elaborated that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389.

The Fifth Circuit has extended *City of Canton* to cover a plaintiff's allegations that the municipality failed to properly discipline its employees. *See Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir. 2001) ("Self-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens."). "The question is how to prove the existence of such a policy." *Id.* at 581–82. "One indication might be a purely formalistic investigation in which little evidence was

taken, the file was bare, and the conclusions of the investigator were perfunctory." *Id.* at 582. Additionally, a plaintiff must prove context. In *Peterson v. City of Fort Worth*, the Fifth Circuit concluded that twenty-seven complaints of excessive force by officers of the Fort Worth Police Department over three years—considered without evidence placing that number in context— were insufficient to establish a pattern of excessive force. *Peterson*, 588 F.3d at 851–52. The *Peterson* court noted that the record did not indicate the size of the police department or how many arrests were made over the relevant time period. *Id.* Likewise, in *Pineda v. City of Houston*, the Fifth Circuit held that, "[e]leven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces." 291 F.3d 325, 329 (5th Cir. 2002).

At summary judgment, Plaintiff argues only that the City's past failures to properly discipline Officer McDaniel makes the City liable for Officer McDaniel's alleged use of excessive force on the night of March 20–21, 2011.[10] Plaintiff produces two pieces of evidence relevant to the inquiry—the 2002 and 2005 internal investigation files for two previous excessive use of force complaints filed against Officer McDaniel. Docket No 30, Exs. 2 & 3.

### a. The 2002 and 2005 Complaints

The 2002 internal investigation file states that an unnamed complainant alleged that on September 1, 2002, Officer McDaniel used excessive force when he pulled the complainant's arms behind her back to handcuff and arrest her. 2002 Investigation File at 1. The complainant

---

[10] Plaintiff also asserts municipal liability for the actions of Sgt. Perdue and Officer Gonzales; however, Plaintiff offers no evidence regarding the City's alleged failure to properly discipline Sgt. Perdue or Officer Gonzales. Moreover, Plaintiff has not presented sufficient evidence to create a genuine fact dispute regarding whether either Sgt. Perdue or Officer Gonzales violated Plaintiff's constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that a municipality may not be held liable under § 1983 where no constitutional deprivation has occurred).

allegedly suffered a shoulder injury. *Id.*   On October 31, 2002, the complaint was "deactivated" for unspecified reasons. *Id.* at 2.

In 2005, the City again received a complaint against Officer McDaniel.  The complainant alleged that on September 29, 2005, Officer McDaniel arrived at a personal residence to arrest a sixteen year-old on her parents' request. 2005 Investigation File at 1.  The parents feared that their daughter would commit suicide. *Id.*  When the daughter tried to leave the home, Officer McDaniel allegedly restrained and handcuffed the sixteen year-old. *Id.*  Officer McDaniel then transported the sixteen year-old to Youth Services, where she complained of a sore left arm. *Id.* The sixteen year-old was transported to a nearby hospital and found to have a broken left arm. *Id.*

The 2005 internal investigation file contains a document titled "San Antonio Police Department Professional Standards Section Statement Information Sheet." *Id.* at 8.   The document informs the complainant that, pursuant to Texas Revised Civil Statute Article 6252-20, subsequently codified in Texas Government Code sections 614.021–614.023, for a complaint to be considered by the head of a local law enforcement agency, the complaint must be in writing and signed by the person making the complaint. *See Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (refusing to consider an unsigned "notice of proposed disciplinary action" as an official complaint).  The 2005 internal investigation file, unlike the 2002 internal investigation file, contains a written and signed complaint. *Id.* at 5–7. The sixteen year-old complainant's signed complaint concludes with the statement:

> During the whole altercation the officers never struck me in any way.  I had been struggling because I did not want to be arrested.  I think my arm broke when the officer tried to slide me to the middle of the seat.  I don't believe the officer harmed me on purpose.  I think it was just an accident.

19

*Id.* at 7.[11]   Ultimately, though the record is not entirely clear, the 2005 complaint was investigated and reviewed by the San Antonio Police Department's internal affairs investigator, internal affairs director, and professional standards commander. *Id.* at 1–3.  These individuals found the complaint to be unfounded. *Id.*

### b. Discussion

While Officer McDaniel has previously been under suspicion for the use of excessive police force, the summary judgment evidence is insufficient to create a dispute of material fact about the existence of a widespread pattern of excessive force condoned by the City.  Plaintiff has established only two complaints (other than the present lawsuit) against Officer McDaniel since 2002.  Plaintiff has not established how long Officer McDaniel has been on the police force, how many arrests he has made over the course of his career, how often an average police officer has complaints filed against him or her, and the frequency of arm injuries during arrest. *See Peterson*, 588 F.3d at 851–52 (finding that twenty-seven complaints against police officers over three years, without evidence placing those numbers in context, were insufficient to establish a municipal policy condoning the use of excessive force).  Moreover, the 2002 internal investigation file shows that a formal complaint was never filed against Officer McDaniel. *See* TEX. GOV'T CODE § 614.022 (requiring that a formal complaint be in writing and signed).  The 2005 internal investigation file, for which there is a signed complaint, shows that an investigation was conducted and that—based on the evidence in the Court record—the conclusion reached was not unreasonable.  Nothing in the record indicates that the City conducted a purely formalistic investigation into official complaints filed against Officer McDaniel. *See Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) (noting that "a purely formalistic investigation in

---

[11] the sixteen year-old was also joined by her parents, who filed additional, signed complaints regarding the incident. *See* 2005 Investigation File at 27–28, 30–31; 33–35.

which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory" may indicate a policy of municipal indifference towards the constitutional rights of its citizens).  Thus, Plaintiff has not created a genuine dispute of material fact about the existence of a widespread pattern of excessive force condoned by the City.  Accordingly, the City's motion for summary judgment is granted.

## B. Bystander Liability

Next—and separate from Plaintiff's excessive force claim—Plaintiff asserts that Officer Gonzales is liable for her failure to prevent Officer McDaniel's alleged use of excessive force against Plaintiff.[12]  "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).  Here, even accepting as true the conclusion that Officer McDaniel used excessive force, the record contains no evidence that Officer Gonzales knew about the use of excessive force.  Plaintiff admits that she does not know whether Officer Gonzales saw Officer McDaniel use excessive force. Pl.'s Dep. 94:3–16; 169:5–10.  Additionally, Officer Gonzales states that she had her attention turned away from the incident involving Plaintiff. Gonzales Aff. at 2.  Since Plaintiff has produced no competent evidence supporting her claim against Officer Gonzales for bystander liability, Officer Gonzales's motion for summary judgment is granted.

---

[12] Plaintiff also asserts that Officer Gonzales failed to prevent Sgt. Perdue's use of excessive force, but, as explained above, Plaintiff has not submitted any summary judgment evidence showing that Sgt. Perdue used any force on Plaintiff.

**C. Negligent Training and Negligent Supervision**

Similarly, Plaintiff has produced no competent summary judgment evidence showing that the City negligently trained or supervised its employees on the police force.

A municipality may be liable under § 1983 for the negligent training or negligent supervision of its employees.  To establish the claim, a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).  To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003).  Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).  Where training complies with state law requirements, a plaintiff must show "this legal minimum of training was inadequate to enable the [officers] to deal with usual and recurring situations faced by jailers and police officers." *See Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

Here, the only arguably relevant summary judgment evidence Plaintiff submitted on the issue of the City's allegedly negligent training and supervision are the internal investigation files discussed above.  Against this, the City filed an affidavit from a captain of the police department's professional standards division/internal affairs unit. Gorhum Aff., Docket No. 27, Ex. A.  The captain avers that the police force requires training beyond the state minimum

requirements. *Id.* at 2.  This includes an additional 600 hours of basic training. *Id.*  Furthermore, the captain avers that the police department has procedures for accepting and investigating complaints. *Id.* at 3–4.  When a complaint is sustained, the chief of police may implement disciplinary actions and the accused may be referred for prosecution. *Id.*  The City also filed excerpts from the San Antonio Police Department's general manual. Docket No. 27, Ex. B–G. These excerpts discuss, among other things, the policies regarding the appropriate use of force in the field.  Based on this evidence, Plaintiff has not met her burden of establishing a genuine issue of material fact regarding the City's alleged negligent training and supervision of its police officers.

**D. The State-Law Claims**

Finally, Plaintiff asserts state-law claims for assault against Sgt. Perdue and Officer McDaniel and for malicious prosecution against Officer McDaniel and the City.

### 1. Sgt. Perdue and Officer McDaniel

In Texas, any state-law tort claim brought against a government employee based on actions within the scope of his or her employment must be dismissed under certain circumstances. *See* TEX. CIV. PRAC. & REM. CODE § 101.106; *Franka v. Velasquez*, 332 S.W.3d 367, 376–79 (Tex. 2011).

Texas Civil Practice and Remedies Code § 101.106(f) states:

If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the

governmental unit as defendant on or before the 30th day after the date the motion is filed.[13]

The Texas Supreme Court has clarified that § 101.106 applies to all torts, not just those torts to which the state has waived sovereign immunity. *See Franka*, 332 S.W.3d at 381 ("[S]ection 101.106(f) . . . foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment."). Explicitly, the Texas Supreme Court has held that § 101.106 applies to intentional torts allegedly committed by a governmental employee acting within the scope of his or her employment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008); *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010) ("[I]f a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves. That this holding applies to intentional torts is clear.") (citing *Garcia*, 599 F.3d at 658); *see also Zepeda v. Sizemore*, SA:11-CV-901-DAE, 2013 WL 4677964, at *9 (W.D. Tex. Aug. 30, 2013) (dismissing Texas state-law claim for assault against police officers); *Tipps v. McCraw*, 945 F. Supp. 2d 761, 768 (W.D. Tex. 2013) (dismissing Texas state-law claim for malicious prosecution against state troopers).

If an employee is entitled to dismissal, he may file a motion to dismiss, and be dismissed in one of two ways: "(1) via the plaintiff's amended pleading substituting the governmental unit for the employee as the defendant; or (2) absent such an amended pleading, via the trial court's order granting the employee's motion and dismissing the suit against the employee." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013). "[S]ubsection (f) does not *require* any affirmative action by the plaintiff." *Id.* (emphasis in the original).

---

[13] Texas Civil Practice and Remedies Code § 101.106(e) similarly states, "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."

Here, Sgt. Perdue and Officer McDaniel filed a motion for summary judgment requesting dismissal of Plaintiff's state-law tort claims pursuant to Texas Civil Practice and Remedies Code § 101.106(f). It is undisputed that Sgt. Perdue and Officer McDaniel were acting within the scope of their employment with a governmental unit. Therefore, pursuant to Texas Civil Practice and Remedies Code § 101.106(f), Plaintiff's state-law tort claims against Sgt. Perdue and Officer McDaniel are dismissed.

### 2. The City

Plaintiff sues the City for the state-law claim of malicious prosecution. "The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Garcia*, 253 S.W.3d at 655; *see* TEX. CIV. PRAC. & REM. CODE § 101.021. The state's waiver of immunity does not extend to claims arising out of intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (excluding waiver for claims "arising out of assault, battery, false imprisonment, or any other intentional tort"). Malicious prosecution is an intentional tort in Texas. *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ). Therefore, the City is immune from suit for malicious prosecution. The City's motion for summary judgment is granted.

### IV. Conclusion

For the foregoing reasons, Defendant Robert McDaniel's, Defendant Cristina Gonzales's, and Defendant J. Perdue's motion for summary judgment (docket no. 26) is GRANTED IN PART AND DENIED IN PART as follows:

- Summary judgment is granted for Officer McDaniel on Plaintiff's claims for Texas state-law assault and malicious prosecution. Summary judgment is

denied him on Plaintiff's claim for the use of excessive force under 42 U.S.C. § 1983.

- Summary judgment is granted for Officer Gonzales on all claims asserted against her.

- Summary judgment is granted for Sgt. Perdue on all claims asserted against him.

Furthermore, Defendant City of San Antonio's motion for summary judgment (docket no. 27) is GRANTED.  Summary judgment is granted for the City on all claims asserted against it.

The only claim remaining in this case is Plaintiff's claim against Officer McDaniel for the use of excessive force under 42 U.S.C. § 1983.  Accordingly, the Clerk is instructed not to close this matter.

It is so ORDERED.

SIGNED this 18th day of February, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE